IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Jerome Cruz-Santiago (2)<br><br>Defendant. | Criminal No. 26-099-2 (GMM) |

## OPINION AND ORDER

Before the Court is Defendant Jerome Cruz-Santiago's ("Mr. Cruz") *Motion Requesting that Detention Order be Vacated and for De Novo Detention Hearing* ("*De Novo Motion*"). (Docket No. 36). A de novo hearing was held on April 28, 2026. (Docket No. 37).

Considering the record, the Court finds that the Government has not met its burden of establishing by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community. Therefore, the Court **GRANTS** the *De Novo Motion*.

## I.   PROCEDURAL BACKGROUND

On March 13, 2026, a *Criminal Complaint* was filed against Mr. Cruz. (Docket No. 1). An affidavit submitted by Drug Enforcement Administration ("DEA") Special Agent Melvin Martinez ("Mr. Martinez") accompanied the complaint describing the allegations underlying Mr. Cruz's charges. (Docket No. 1-1). Mr. Martinez was

**Criminal No. 26-099-2 (GMM)**
**Page -2-**

not on the scene while the following events took place. (Id. at 2).

According to this account, on March 9, 2026, Puerto Rico Police Department ("PRPD") agents received information that a fugitive with drug and firearm possession charges – co-defendant Kelvin Torres-Alvarado ("Mr. Torres") - was being harbored at a residence in Juana Diaz, Puerto Rico, later identified as Mr. Cruz's parents' home. (Id. at 3).

Surveillance was established at this residence on March 12, 2026. (Id.). PRPD agents observed an individual - later identified as co-defendant Carlos Alberto Rivera-Dominguez ("Mr. Rivera") – enter the household. Approximately an hour later, PRPD agents observed Mr. Torres exit a vehicle with a black shoulder strap bag and an orange cellular phone and enter the residence. (Id.). PRPD agents notified the United States Marshals Service ("USMS") of their observations.

USMS then approached the residence and initiated contact with defendants. (Id. at 4). Mr. Cruz opened the door while holding a baby. (Id.).[1] USMS deputies issued multiple commands before Mr. Cruz placed the baby down and complied, allowing USMS to detain

---

[1] The *Criminal Complaint* describes Mr. Cruz as holding the baby "like a shield," which Mr. Cruz contests. (Docket Nos. 17, 36). However, as the affidavit was prepared by an individual not at the scene, the Court can neither credit nor discredit this allegation.

**Criminal No. 26-099-2 (GMM)**
**Page -3-**

him. USMS called for Mr. Rivera and Mr. Torres to exit the residence, who complied and were subsequently detained. (Id.).

From the doorway, USMS allegedly "observed in plain view a firearm and several pistol magazines on top of a table near the entrance of the residence." (Id.). This prompted USMS to conduct a sweep of the residence and a pat-down of the defendants. A search of the residence revealed that the firearm on the table was "a loaded black Glock 19 Gen 5 pistol with a red band on the grip, bearing serial number BSKY816" and contained a 15-round magazine with one round in the chamber and 14 rounds in the magazine, along with five other Glock 19 magazines. (Id. at 5). DEA Special Agent Mr. Martinez later examined this firearm and identified it as having been modified to operate fully automatically, qualifying as a machinegun. (Id. at 7-8).

Near this firearm was a bag that matched the description of the bag Mr. Torres was carrying when he was observed entering the residence, along with the orange cellular phone. (Id.). Three other cellular phones were observed on the table, two of which belonged to Mr. Rivera and his mother. (Id.).

During Mr. Cruz's pat-down, USMS located "a loaded black Glock 22 Gen 5 pistol on the right side of Mr. Cruz's waistband, with a 15-round magazine inserted, bearing serial number CABU687." (Id. at 4). USMS then conducted a full search of Mr. Cruz's person,

Criminal No. 26-099-2 (GMM)
Page -4-

which revealed a blue cellular phone and three Glock 22 magazines in his front pocket with rounds of ammunition. A later search identified that Mr. Cruz possessed a valid license to carry a firearm. (Id. at 4-5).

On March 19, 2026, a grand jury charged Mr. Cruz in an Indictment with possession of a machinegun in violation of 18 U.S.C. § 922(o) and 2. (Docket No. 18).

On March 18, 2026, the U.S. Probation Office filed Mr. Cruz's Pretrial Services Report ("PSR"). (Docket No. 14). The PSR identified Mr. Cruz as a 23-year-old lifelong resident of Puerto Rico who has never traveled out of the United States and has no arrest, juvenile, or other criminal history. (Id. at 2-3). Mr. Cruz is currently unemployed. (Id. at 2). He lives with his parents, a police officer and a warehouse worker, and maintains a five-year relationship with his partner, with whom he shares a one-year-old baby. (Id. at 1-2).

Ultimately, the U.S. Probation Office recommended Mr. Cruz be detained pending trial. (Id. at 3-4). The Probation Office characterized Mr. Cruz as a flight risk and a danger to the community for several reasons, including: the nature of the offense charged; lack of known familial, residential, community, employment, property, and financial ties; criminal association; and safety concerns for the community. (Id. at 4). It advised that

"[t]here is no condition or combination of conditions that will reasonably assure the safety of the community." (Id.).

On March 18, 2026, Magistrate Judge Marshal D. Morgan ("Magistrate Judge Morgan") issued an *Order of Detention Pending Trial*. (Docket No. 22). In making his decision, Magistrate Judge Morgan emphasized "the presence of a loaded machinegun on a table within reach of a small child" and "the defendant's knowing association with a fugitive wanted on serious federal drug and firearm charges." (Id. at 3). This reflected a "grave lack of judgment that no condition or combination of release could adequately address," to Magistrate Judge Morgan, leading to a denial of bail.

On April 21, 2025, Mr. Cruz filed the instant *De Novo Motion*. (Docket No. 36). He argues that the Court's "finding is not based on the evidence, as required by the Bail Reform Act, but on supposition, speculation and assumptions that cannot be relied upon to deny bail." (Id. at 2). Mr. Cruz contends that the Government introduced no witness testimony, and the affidavit the *Criminal Complaint* relies on is submitted by someone without personal knowledge of the event. (Id.). Moreover, Mr. Cruz argues that Magistrate Judge Morgan improperly assumed, without receiving any evidence to this effect, that Mr. Cruz's son was ambulating around the house, that a loaded machinegun was in the child's

**Criminal No. 26-099-2 (GMM)**
**Page -6-**

reach, and that Mr. Cruz had knowledge that Mr. Torres was a fugitive. (Id. at 4-5). Instead, Mr. Cruz points the Court's attention to the fact that: the firearm in his waistband was lawful, (id. at 5); Mr. Cruz complied with authorities upon arrest, (id. at 9); and he has no arrest record, history of violence, and has personal ties that suggest he will not flee the jurisdiction. *See* (id. at 10-11). Finally, Mr. Cruz argues there is no specific evidence that demonstrates he is a danger to the community. (Id. at 11-12).

On April 25, 2026, the United States of America ("Government") opposed the *De Novo Motion* by filing *Government's Opposition to Defendant's: Motion to Vacate Detention Order and Request for De Novo Detention Hearing*. (Docket No. 41). The Government avers that "the charged offense, possession of a machinegun, together with the circumstances surrounding Defendant's arrest demonstrates that Defendant poses a clear and ongoing danger to the community." (Id. at 1-2). Irrespective of who owned the machinegun, the Government argues that the presence of a fugitive, coupled with multiple people with potential access to firearms and a machine gun, creates a dangerous environment. (Id. at 4). As to Mr. Cruz's challenges to the evidence, the Government asserts a proffer is sufficient per statute for the purposes of a bail hearing and were otherwise corroborated by law

enforcement observations. (Id. at 5-7). While the Government concedes Mr. Cruz has limited or no prior criminal history, it argues this is not dispositive given Mr. Cruz's chosen associations with a fugitive and multiple weapons in plain view in a residence. (Id. at 7-8). No combination of conditions could address the particular dangers raised by this combination of facts, according to the Government. (Id. at 9-10).

The Court held a de novo bail hearing on April 28, 2026. (Docket No. 44). At the hearing, Mr. Cruz requested the Government present witness testimony to meet its burden of proof. The Government objected, stating it is not required to do so, and proceeded by proffer. Putting aside the evidence Mr. Cruz contests, the Government argued against conditions of release based on the facts not in dispute: nature of Mr. Cruz's offense as charged, his associations with a fugitive, and the presence of a minor near firearms and a machinegun. No combination of bail conditions, the Government stressed, would change the danger this combination of circumstances posed. The Government further contended that Mr. Cruz had not offered any new evidence beyond that already considered by Magistrate Judge Morgan and therefore requested that he remain detained pending trial.

Mr. Cruz also proceeded by way of proffer. He argued that the Government had failed to meet its evidentiary burden in proceeding

Criminal No. 26-099-2 (GMM)
Page -8-

by proffer and failed to demonstrate that the Defendant poses a danger to the community and that conditions of release can be fashioned to reasonably ensure the safety of the community. Mr. Cruz noted that his firearm license has already been taken away, and the fact that Mr. Cruz lived with his son while lawfully owning a gun should not be used against him.

At the conclusion of the de novo hearing, the Court took the matter under advisement and maintained the status quo to review the entire record in more detail.

## II.   LEGAL STANDARD

A.   Standard of Review of a Detention Order Pursuant to the Bail Reform Act

A district court reviews "a magistrate judge's order of detention or release under a *de novo* standard and 'need not defer to the magistrate judge's findings or give specific reasons for rejecting them.'" United States v. Ramos-Meléndez, No. 24-CR-77-RAM, 2024 WL 1430783, at *3 (D.P.R. Apr. 3, 2024) (*quoting* United States v. Cidraz-Santiago, 18 F. Supp. 3d 124, 126 (D.P.R. 2014)); *see also* United States v. Tortora, 922 F.2d 880, 883 n. 4 (1st Cir. 1990); United States v. Rodríguez-Romero, 18 F. Supp. 3d 116, 118 (D.P.R. 2014). A district court may also "take additional evidence or conduct a new evidentiary hearing" when "the defendant has placed relevant facts at issue." Cidraz-Santiago, 18 F.Supp.3d at 126.

Criminal No. 26-099-2 (GMM)
Page -9-

In performing its duty, the district court must consider the statutory factors set forth by the Bail Reform Act of 1984, 18 U.S.C. §§ 3141-56 ("Bail Reform Act"), at Section 3142. *See* Rodríguez-Romero, 18 F. Supp. 3d at 118.

B.    Bail Reform Act

The Bail Reform Act provides for the pretrial detainment of persons after a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "The government must establish risk of flight by a preponderance of the evidence [(i.e., that it is more likely than not)]; and/or dangerousness by clear and convincing evidence." United States v. Vázquez-Cintrón, No. 19-CR-685-PAD, 2020 WL 1310540, at *1 (D.P.R. Mar. 17, 2020). Clear and convincing evidence as to dangerousness is "more than preponderance of the evidence but less than beyond a reasonable doubt." United States v. Isaac-Sanchez, No. 24-CR-124-1-RAM, 2024 WL 4223715, at *5 (D.P.R. Sep. 12, 2024).

To determine if the government has met its burden, the district court must consider the following factors: "(1) the nature and circumstances of the offense charged; (2) the weight of the evidence as to guilt or innocence; (3) the history and characteristics of the accused, including past conduct; and (4)

Criminal No. 26-099-2 (GMM)
Page -10-

the nature and gravity of the danger posed by the person's release." Tortora, 922 F.2d at 884; *see also* 18 U.S.C. § 3142(g). Danger is not limited to the risk of physical violence. Id. While the Court reviews the record de novo, it must remain mindful that pretrial detention is a limited exception to the general rule of liberty. Id.

### III.  DISCUSSION

Before turning to the elements, the Court flags a threshold matter: no statutory presumption for detention applies in this case. Defendant is charged with possession of a machinegun under 18 U.S.C. § 922(o), an offense not enumerated under 18 U.S.C. §§ 3142(e)(2) and (3). *See* United States v. Mieses-Casiano, 161 F. Supp. 3d 166, 169 (D.P.R. 2016).

The Court, therefore, analyzes the Section 3142(f) factors in turn without any statutory thumb on the scale.

A.    The Nature and Circumstances of the Offense Charged

Turning first to the nature and circumstances of the offense, Mr. Cruz is charged with knowingly possessing a machinegun in violation of 18 U.S.C. § 922(o) and Section 2. (Docket No. 18). The Court recognizes that the alleged presence of a fully automatic firearm, along with multiple magazines and ammunition, raises serious concerns.

The circumstances described by the Government, including the presence of a fugitive and firearms inside a residence where a

**Criminal No. 26-099-2 (GMM)**
**Page -11-**

minor child was present, are deeply troubling and reflect, at minimum, a significant lapse in judgment.

However, the record does not contain specific evidence demonstrating that Defendant exercised dominion or control over the machinegun, nor that he knowingly possessed it, beyond the Government's proffered inferences based on an affidavit provided by someone who was not at the scene of the arrest. The Court notes that the machinegun was found partially protruding from a bag that matched the description of the bag carried by co-defendant Mr. Torres, further attenuating the nexus between Mr. Cruz and the prohibited weapon. *See* (Docket No. 41 at 6).

Accordingly, while this factor weighs in favor of detention due to the seriousness of the alleged conduct, the weight afforded is moderate rather than dispositive under the specific facts of this case.

B.    The Weight of the Evidence Against Defendant

"This factor goes to the weight of the evidence of [risk of nonappearance and] dangerousness, not the weight of the evidence of the defendant's guilt." United States v. Stone, 608 F.3d 939, 948 (6th Cir. 2010); United States v. Ramos-Domínguez, 698 F. Supp. 3d 224, 229 (D.P.R. 2023).

**Criminal No. 26-099-2 (GMM)**
**Page -12-**

The Government proceeded by proffer, which is permissible under First Circuit precedent.[2] However, the Court must still assess the reliability and persuasive force of that proffer, especially when the Government seeks to meet the heightened clear and convincing evidentiary standard for dangerousness.

Here, the affidavit supporting the *Criminal Complaint* was submitted by an agent without firsthand knowledge of the events. *See* (Docket No. 1-1). Nor did the Government present live testimony or additional corroborating evidence at the de novo hearing from someone who had this direct knowledge. (Docket No. 44). Taken together, the Government's evidentiary strength begins on shaky grounds.

---

[2] 18 U.S.C. § 3142(f) sets out the requirements for detention hearings. It states that a defendant "shall be afforded an opportunity to testify, to present [or cross-examine] witnesses, . . . and to present information by proffer or otherwise." Id. The statute is silent as to the Government's method of presenting its arguments. In interpreting this statute, the First Circuit has long held that both parties may proceed by proffer. United States v. Acevedo-Ramos, 755 F.2d 203, 208 (1st Cir. 1985). This settled interpretation has been revisited as of late in this district. *See, e.g.*, United States v. Ramos-Dominguez, 698 F. Supp. 3d 224, 232 (D.P.R. 2023) (interpreting United States v. Femia, 983 F.2d 1046 (1st Cir. 1993) (table), 1993 WL 5893, at *3-6 (1st Cir. 1993), an unpublished First Circuit decision that largely examined flight risk, to suggest that the Government can only proceed by proffer for cases concerned with flight risk). Nevertheless, the First Circuit has been resoundingly clear – even in Femia itself – that both parties are entitled to proceed by proffer irrespective of the grounds for detention. *See* Femia, 1993 WL 5893, at *4 ("[Defendant's] objection that a judicial officer may not order detention on the basis of a mere proffer of evidence by the government is simply not correct.). As such, this Court adheres to the First Circuit's charge on this matter.

**Criminal No. 26-099-2 (GMM)**
**Page -13-**

The Government's theory as to Defendant's dangerousness replicates this weakness. It relies substantially on inference, namely Mr. Cruz's proximity to the machinegun and association with a fugitive (Docket No. 14 at 4), rather than direct evidence of knowing possession, knowing association, or future risk. At the same time, the undisputed and corroborated record reflects: Defendant's lawful possession of a licensed firearm, (Docket No. 36 at 10-11); his compliance with law enforcement at the time of the arrest (Docket No. 1-1 at 4); and absence of criminal history, (Docket No. 14 at 3).

The Government's proffer did not attend much to Mr. Cruz's risk of fleeing the jurisdiction, but the record indicates it is minimal. As to flight risk, the PSR notes that Mr. Cruz has never left the United States but has identified two times where Mr. Cruz left to live in Maine for nine months and Texas for eight months; he had just returned to Puerto Rico in January 2026. (Docket No. 14 at 2). The Court interprets Defendant's history of returning to Puerto Rico following temporary stays abroad as evidence of strong jurisdictional ties rather than a propensity for flight.

On balance, the Court finds that this factor does not weigh in favor of detention.

Criminal No. 26-099-2 (GMM)
Page -14-

C.    Mr. Cruz's Personal History and Characteristics

The Court finds that Defendant's personal history strongly favors release. Mr. Cruz is 23 years old, has no prior criminal record, (Docket No. 14 at 1-2), and maintains strong familial and community ties. He resides with his parents, one of whom is a law enforcement officer, (id. at 2), and has a longstanding relationship with the mother of his child. (Docket No. 36 at 10-11). There is no evidence of prior violence, failure to appear, or disregard for court orders. (Id. at 3-4). While Defendant is currently unemployed, this factor alone does not establish risk of flight or danger.

Accordingly, this factor weighs strongly in favor of release.

D.    The Nature and Seriousness of the Danger to Any Person or the Community Posed by Mr. Cruz's Release

The Court takes seriously the Government's concerns regarding community safety. However, "dangerousness" under the Bail Reform Act requires "a high degree of certainty that the information presented supports the conclusion of dangerousness or" a showing of a specific, identifiable risk posed by the defendant's release that cannot be mitigated by tailored bail conditions. See United States v. Acevedo-Ramos, 600 F. Supp. 501, 509 (D.P.R. 1984).

That "high degree of certainty" is absent here. The presence of a machinegun, a firearm, and a fugitive in a residence where a minor was present raises legitimate concerns about the environment

in which Defendant was operating. That said, this Court must distinguish between the poor judgment exhibited by the Defendant's alleged associations and legally sufficient proof of future dangerousness. To that end, the Government has not demonstrated that Mr. Cruz himself poses a concrete, prospective danger to the community that cannot be mitigated through conditions of release.

## IV.    CONCLUSION

Upon considering the proffers, the PSR, Magistrate Judge Morgan's detention order, and the entire record, the Court finds the Government has not met its burden of establishing by clear and convincing evidence that Defendant poses a danger to the community that cannot be reasonably mitigated through conditions of release. Nor has the Government established by a preponderance of the evidence that Defendant presents a serious risk of flight. Any remaining concerns regarding the safety of the community or the risk of flight can be adequately addressed by the stringent conditions of release set forth below, including home confinement and location monitoring.

Accordingly, the *De Novo Motion* is **GRANTED**. The Court orders Mr. Cruz's release subject to the following conditions:

1.  Defendant must not violate federal, state, or local law while on release.

2.  Defendant must appear in Court as required and, if convicted, must surrender as directed to serve a sentence that the Court may impose.

**Criminal No. 26-099-2 (GMM)**
**Page -16-**

3.  Defendant will execute an unsecured bond binding Defendant to pay the United States the sum of ten thousand dollars ($10,000) in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

4.  Defendant will be placed in the third-party custody of another who must agree to (a) supervise the Defendant, (b) use every effort to assure his appearance at all court proceedings, (c) notify the Court immediately if Defendant violates a condition of release or is no longer in the custodian's custody, and (d) surrender any firearms he might possess. Defendant shall reside with the third-party custodian in the address recorded by the U.S. Probation Officer. This residence shall not be the residence where Defendant was arrested in the instant matter.

5.  Defendant's release is conditioned upon qualification of the third-party custodian and of his residence, as well as verification by the U.S. Probation Office of electronic monitoring device capability in the proposed residence. The U.S Probation Office must submit a notice to this Court identifying the third-party custodian and the efforts taken to establish that the third-party custodian is indeed qualified.

6.  Defendant shall submit to location or electronic monitoring as directed by the U.S. Probation Office or supervising officer and comply with all the program requirements and instructions provided.

7.  Home detention with electronic monitoring: Defendant shall be at all times restricted to the third-party custodian's residence except for religious services; medical or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities pre-approved by the U.S. Probation Officer.

8.  Defendant shall submit to supervision by and report for supervision to the U.S. Probation Office.

**Criminal No. 26-099-2 (GMM)**
**Page -17-**

9.  Defendant shall not leave the jurisdiction of this District.

10. Defendant shall refrain from possessing firearms, destructive devices, or other dangerous weapons.

11. Defendant shall refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

12. Defendant shall not enter any airport or pier.

Mr. Cruz is warned that failure to comply with the conditions of release in this case will trigger revocation proceedings and, potentially, result in a return to pretrial detention.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on May 6, 2026.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE